UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ISAAC GICHURU KINUTHIA,

 Plaintiff,


 v.         CIVIL ACTION NO. 21-11684-NMG


JOSEPH ROBINETTE BIDEN, JR.,
President of the United States,

 Defendant.



REPORT AND RECOMMENDATION ON
DEFENDANT'S PARTIAL MOTION TO DISMISS (#36).

KELLEY, U.S.M.J.

I. Introduction.

 On October 15, 2021, Isaac Gichuru Kinuthia, pro se, filed a lengthy complaint against President Biden. In the first half, he seeks relief from the President, United States Citizenship and Immigration Services (USCIS), and the Attorney General of the United States (AG)[1] because of delay in issuing him a new Form I-766 "Employment Authorization Document" (EAD) before the expiration of his old EAD. (#1-2 ¶¶12, 16-36, 68-69.) About eight weeks after he filed this lawsuit, USCIS issued plaintiff's new EAD, which is valid until December 8, 2022. *See* #37-1 (notice of approval); #13-1 at 1 (new EAD).

---

[1] The court will refer to the President, USCIS, and the AG simply as "defendant."

In the second half of his complaint, plaintiff seeks reversal of USCIS's denial of his Form I-140 petition for classification as a non-citizen of "extraordinary ability" as defined by 8 C.F.R. §204.5(h). (#1-2 ¶¶13, 37-69.)

On March 2, 2022, this court issued a Report and Recommendations (R&R) on several pending motions, in which the court recommended that defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(5) for the failure to complete service of process on the AG be denied without prejudice to its renewal. (#21 at 9-14.) Judge Gorton adopted the March 2 R&R. (#32.)

On June 13, 2022, defendant filed an answer to plaintiff's complaint. (#35.) Defendant also filed a "Partial Motion to Dismiss" with a memorandum of law in support. (##36; 37.)  On June 23, plaintiff filed a "Response" to defendant's answer and on June 30, he filed an "Opposition" to defendant's Partial Motion to Dismiss, which supplements his "Response." (#38, 39.)

Judge Gorton has referred defendant's Partial Motion to Dismiss to this court. (#40.) Defendant has not moved to dismiss the second half of plaintiff's complaint, *see* #37 at 2; therefore, plaintiff's claim that USCIS erred in denying his Form I-140 petition will proceed beyond this stage.

Regarding the first half of plaintiff's complaint, related to USCIS's alleged delay in issuing him a new EAD, defendant argues that the court does not have jurisdiction to order most of the relief that plaintiff seeks and that he has failed to state plausible constitutional claims. (#37 at 4-18.) As discussed below, the court agrees, and recommends dismissal of the first half of plaintiff's complaint.

II. <u>Standards of Review</u>.

    A. <u>Fed. R. Civ. P. 12(b)(1)</u>.

    Federal courts are courts of limited subject matter jurisdiction, and jurisdiction is never presumed. *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998). Fed. R. Civ. P. 12(b)(1) is the vehicle by which a party raises the absence of federal subject matter jurisdiction. *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 362-363 (1st Cir. 2001). The party invoking federal subject matter jurisdiction – here, plaintiff – bears the burden of proving its existence. *Viqueira*, 140 F.3d at 16.

    A Rule 12(b)(1) motion may present a facial or factual challenge to federal subject matter jurisdiction. *Cebollero-Bertran v. Puerto Rico Aqueduct and Sewer Auth.*, 4 F.4th 63, 69 (1st Cir. 2021); *see Valentin*, 254 F.3d at 363-364. A facial challenge involves questions of law based solely on the factual allegations in the complaint. *Cebollero-Bertran*, 4 F.4th at 9. When the defendant raises a facial challenge, the Rule 12(b)(1) analysis is similar to the analysis under Fed. R. Civ. P. 12(b)(6): the court accepts well-pleaded factual allegations in the complaint as true and views them, and the reasonable inferences drawn from them, in the light most favorable to the plaintiff, asking whether the complaint states a "plausible" claim of federal subject matter jurisdiction. *Id.*; *see Marasco & Nesselbush, LLP v. Collins*, 6 F.4th 150, 166 (1st Cir. 2021); *Torres-Negrón v. J & N Records, LLC*, 504 F.3d 151, 162-163 & n.8 (1st Cir. 2007).

    A factual challenge to federal subject matter jurisdiction is not based solely on the factual allegations in the complaint. *See Toddle Inn Franchising, LLC v. KPJ Assoc.*, *LLC*, 8 F.4th 56, 61 n.5 (1st Cir. 2021). When the defendant raises a factual challenge, the court may consider extraneous evidence. *See id.*; *see also Valentin*, 254 F.3d at 362-363. The argument that a claim has become moot because of an event that occurred while the case was pending is a factual

challenge, properly raised in a Rule 12(b)(1) motion. *See Valentin*, 254 F.3d at 362-363; *see, e.g.*, *Frye v. Gardner*, #20-cv-751-SM, 2020 WL 7246532, *1-2 (D. N.H. Dec. 9, 2020).

B. Fed. R. Civ. P. 12(b)(6).

A Rule 12(b)(6) motion always presents a facial challenge to the sufficiency of the complaint. *Cebollero-Bertran*, 4 F.4th at 69. It is generally decided on the complaint, although the court also may consider documents attached to the complaint and matters of public record subject to judicial notice. *Id*. at 69 n.4.

Under Rule 12(b)(6), the court accepts the well-pleaded factual allegations in the complaint as true and views them, and the reasonable inferences drawn from them, in the light most favorable to the plaintiff. *See Marasco & Nesselbush, LLP*, 6 F.4th at 166; *Cebollero-Bertran*, 4 F.4th at 69-70. Yet the court disregards recitals of the elements of claims and legal assertions. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-556, 564 (2007))). To avoid dismissal, a complaint must include sufficient factual allegations to state a claim for relief that is "plausible" on its face. *Iqbal*, 556 U.S. at 678-679; *Twombly*, 555 U.S. at 570.

C. Pro se complaints.

The court must liberally construe pro se complaints. *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997); *see Falk v. Wells Fargo Bank, N.A.*, --- F.Supp.3d ---, #22-cv-10010-NMG, 2022 WL 1224936, at *2 (D. Mass. April 26, 2022). But even pro se litigants must satisfy procedural and substantive requirements. *Ahmed*, 118 F.3d at 890; *see Falk*, 2022 WL 1224936, at *2. The court does not act as a pro se litigant's advocate and need not "conjure up" allegations to establish jurisdiction or state a plausible claim. *Brown v. Dept. of Vet. Aff.*, 451 F. Supp. 2d 273, 277 (D. Mass. 2006) (quoting *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979)); *see Curran v.*

*New Bedford Pub. Sch. Sys.*, #07-cv-11947-NMG, 2007 WL 9798458, at *2 (D. Mass. Oct. 31, 2007); *accord Vieira v. De Souza*, 22 F.4th 304, 311 (1st Cir. 2022).

III. <u>Discussion</u>.

    A. <u>Relevant Immigration Law</u>.

    Pursuant to Immigration and Naturalization Act (INA) section 241(b)(3), a non-citizen may not be removed from the United States to a country in which his "life or freedom would be threatened. . . because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Withholding of removal status is "country-specific;" while a non-citizen granted withholding of removal cannot be removed to the country where his life or freedom would be threatened, he can be removed to a third country. *Johnson v. Guzman Chavez*, --- U.S. ---, 141 S.Ct. 2271, 2283, 2285-2286 (2021) (citations and punctuation omitted); *see* 8 C.F.R. §208.16(f); *see also Kouambo v. Barr*, 943 F.3d 205, 210 (4th Cir. 2019); *R-S-C v. Sessions*, 869 F.3d 1176, 1180 (10th Cir. 2017); *Garcia v. Sessions*, 856 F.3d 27, 32 (1st Cir. 2017). Withholding of removal status does not provide a basis for adjustment to "legal permanent resident" (LPR) status, *see R-S-C*, 869 F.3d at 1180; *Garcia*, 856 F.3d at 32, and, accordingly, to citizenship.[2]

    Whether any non-citizen is eligible to work in this country depends on his status or conditions. USCIS regulations outline three classes of non-citizens who may be eligible. *See generally* 8 C.F.R. §§274a.12(a), 274a.12(b), 274a.12(c). LPRs, asylees, and non-citizens granted

---

[2] With exceptions for some military servicemembers, *see generally* 8 U.S.C. § 1439, only non-citizens who have been "lawfully admitted to the United States for permanent residence" are eligible for naturalization. *See* 8 U.S.C. § 1429; *see also* 8 U.S.C. § 1427(a); 8 U.C.S. § 1101(a)(20).

    Asylum status, unlike withholding of removal status, provides a basis for adjustment to LPR status. Moreover, asylees are protected from removal to any country. *See R-S-C*, 869 F.3d at 1180; *Garcia*, 856 F.3d at 32; *see also Kouambo*, 943 F.3d at 210.

withholding of removal, among others, are in the first class. *See* 8.C.F.R. §274a.12(a)(1) (LPRs); 8 C.F.R. §274a.12(a)(5) (asylees); 8 C.F.R. §274a.12(a)(10) (non-citizens granted withholding of removal). LPRs, asylees, and non-citizens granted withholding of removal are all eligible to work in this country "incident to status" without restrictions as to location or type of employment. 8 C.F.R. §274a.12(a). Non-citizens granted withholding of removal are included in the list of non-citizens in the first class who "must apply" to USCIS for documents evidencing employment authorization; LPRs and asylees are not included in that list. *Id.*; *see also Garcia*, 856 F.3d at 47 & n. 17 (Stahl, J., dissenting).[3] [4] USCIS "may, in its discretion, determine the validity period assigned to any document issued evidencing such employment authorization." 8 C.F.R. §274a.12(a).[5]

---

[3] A LPR's Form I-551 "Permanent Resident Card" (PRC), or "green card," is evidence of his employment authorization. 8 C.F.R. §274a.12(a)(1); *see also* USCIS, "Green Card," https://www.uscis.gov/green-card (last visited Nov. 2, 2022). Most PRCs are valid for ten years. *See* USCIS, "Employment Authorization Document," https://www.uscis.gov/green-card/green-card-processes-and-procedures/employment-authorization-document (information accessed by clicking "Green Card") (last visited Nov. 2, 2022); *see also* USCIS, "Handbook for Employers M-274," https://www.uscis.gov/i-9-central/form-i-9-resources/handbook-for-employers-m-274/60-evidence-of-status-for-certain-categories/61-lawful-permanent-residents-lpr (last visited Nov. 2, 2022). An expiration date indicates that the PRC must be renewed, not that the LPR's employment authorization has expired. 8 C.F.R. §274a.12(a)(1).

[4] USCIS issues EADs to asylees. *See* USCIS, "Handbook for Employers M-274," https://www.uscis.gov/i-9-central/form-i-9-resources/handbook-for-employers-m-274/60-evidence-of-status-for-certain-categories/63-refugees-and-asylees (last visited Nov. 2, 2022); *see also Garcia*, 856 F.3d at 47 n.17 (Stahl, J., dissenting). An asylee's EAD may be valid for up to five years and an expiration date indicates that the EAD must be renewed, not that the asylee's employment authorization has expired. 8 C.F.R. §274a.12(a)(5).

[5] To "help ease processing backlogs" and "prevent gaps in employment authorization and documentation," USCIS recently updated its guidelines on maximum validity periods for EADs. As of February 7, 2022, USCIS will "generally" issue initial and renewed EADs to, among others, non-citizens granted withholding of removal and asylees that are valid for two-year periods. *See* USCIS, "USCIS Updates Guidelines on Maximum Validity Periods for New Employment Authorization Documents for Certain Applicants," https://www.uscis.gov/newsroom/alerts/uscis-updates-guidelines-on-maximum-validity-periods-for-new-employment-authorization-documents-for (last visited Nov. 2, 2022).

An EAD will be automatically extended by a maximum of 180 days from the expiration date shown on its face if specified conditions are met. 8 C.F.R. §274a.13(d)(1). To qualify for an automatic extension, an application for renewal must be properly filed before the expiration date shown on the face of the EAD; based on the same employment authorization category shown on its face; based on a class of non-citizens whose eligibility to apply for employment authorization continues despite expiration of the EAD; and, based on an employment authorization category that does not require adjudication of an underlying application or petition before adjudication of the renewal application. 8 C.F.R. §274a.13(d)(1)(i)-(iii). 8 C.F.R. §274a.13(d)(4) provides that an EAD that "has expired on its face is considered unexpired when combined with a Notice of Action (Form I-797C), which demonstrates that the requirements of paragraph (d)(1) of this section [referenced above] have been met." *Id*. Effective May 4, 2022, to October 15, 2025, the automatic extension is increased from a maximum of 180 days to a maximum of 540 days "for all eligible classes of" non-citizens "who properly filed their renewal application on or before October 26, 2023." 8 C.F.R. §274a.13(d)(5).

A previous version of 8 C.F.R. §274a.13(d) stated that USCIS "will adjudicate" specified EAD applications within 90 days from the date of receipt of the application and that failure to do so "will result" in the grant of an interim employment authorization document valid for up to 240 days. 8 C.F.R. §274a.13(d) (eff. May 26, 2015, to Jan. 16, 2017). However, the 90-day adjudication requirement was eliminated in 2016, and the previous version of 8 C.F.R. §274a.13(d) was amended in 2017. *See Retention of EB-1, EB-2, and EB-3 Immigrant Workers and Program Improvements Affecting High-Skilled Nonimmigrant Workers*, 81 Fed. Reg. 82398, 82455 (Nov. 18, 2016); *see also Kang v. Dept. of Homeland Sec.*, #21-cv-2944 (RJL), 2022 WL 4446385, at *1

(D. D.C. Sept. 23, 2022); *Uranga v. U.S. Citizenship & Immigration Srvcs.*, 490 F. Supp. 3d 86, 93 (D. D.C. 2020).

There is no legislative mandate that USCIS process applications to renew EADs filed by non-citizens granted withholding of removal within a particular timeframe. 8 U.S.C. § 1571(b) states that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application. . . ." *Id*. That statute is regarded as non-binding, though courts recognize that it may provide an indication of congressional expectation regarding the agencies' pace of immigration benefit application processing. *See Giliana v. Blinken*, --- F. Supp. 3d ---, #21-cv-01416 (CRC), 2022 WL 910338, at *5 (D. D.C. Mar. 29, 2022); *Tony N. v. U.S. Citizenship & Immigration Srvcs.*, #21-cv-08742-MMC, 2021 WL 6064004, at *5 (N.D. Cal. Dec. 22, 2021); *Verma v. U.S. Citizenship and Immigration Srvcs.*, #20-cv-3419 (RDM), 2020 WL 7495286, at *7 (D. D.C. Dec. 18, 2020).

The Administrative Procedure Act (APA), *see* 5 U.S.C. §§ 551, *et seq.*, requires agency action "within a reasonable time." 5 U.S.C. § 555(b). The APA also directs that a court "compel" agency action "unlawfully withheld" or "unreasonably delayed." 5 U.S.C. § 706(1). In determining whether agency action is "unreasonably delayed," courts often apply the so-called "*TRAC* factors:"[6]

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take

---

[6] *See, e.g.*, *Towns of Wellesley, Concord & Norwood, Mass. v. FERC*, 829 F.2d 275, 277 (1st Cir. 1987); *see also*, *e.g.*, *V.U.C. v. U.S. Citizenship and Immigration Srvcs.*, 557 F. Supp. 3d 218, 223 (D. Mass. 2021); *King v. Office for Civil Rights of U.S. Dept. of Health and Human Srvcs.*, 573 F. Supp. 2d 425, 429-431 (D. Mass. 2008).

into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*") (citations and punctuation omitted).[7]

"The duration of administrative proceedings, without more, cannot suffice to demonstrate that an agency's actions are unreasonable." *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 178 (1st Cir. 2016); *see V.U.C.*, 557 F. Supp. 3d at 224. That said, in other immigration contexts, courts have declined to find delays of several years unreasonable.[8] Courts have also declined to grant preliminary relief when USCIS takes over six, seven, or even eight months to process applications for new EADs, including in cases in which old EADs expired.[9]

---

[7] The Mandamus and Venue Act (MVA), 28 U.S.C. § 1361, gives federal district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *Id.* The MVA and APA tests differ; but, where agency action has allegedly been unreasonably delayed, courts recognize that a mandamus claim is, effectively, an APA one. *See King*, 573 F. Supp. 2d at 429 n.2; *see also Karam v. Garland*, #21-cv-0815 (CKK), 2022 WL 4598626, at *6 (D. D.C. Sept. 30, 2022).

[8] *See Giliana*, 2022 WL 910338, at *5 (courts have "generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable") (citations and punctuation omitted); *see, e.g.*, *V.U.C.*, 557 F. Supp. 3d at 221, 224 (granting defendants' Rule 12(b)(6) motion to dismiss APA and mandamus claims based on almost four-year delay in USCIS's determination of eligibility for U nonimmigrant status waitlist).

[9] *See, e.g.*, *Vasireddy v. Mayorkas*, #3:21-cv-0358-S, 2021 WL 4888943, at *1, 2 (N.D. Tex. Mar. 26, 2021) (denying motion for temporary restraining order and preliminary injunction filed by H-4 visa holder whose EAD application had been pending over seven months and whose old EAD expired, resulting in unpaid leave of absence from job); *Tony N.*, 2021 WL 6064004, at *1, 4-5, 7 (asylum applicants' EAD applications pending beyond the automatic 180-day extension); *Kamath v. Campagnolo*, #21-cv-01044-CJC (ADSx), 2021 WL 4913298, *1-3 (C.D. Cal. Aug. 13, 2021) (H-4 visa holder's EAD application pending over eight months and old EAD expired, resulting in unpaid leave).

B. <u>Construing this Pro Se Complaint</u>.

　　1. <u>Factual allegations</u>.

The factual basis for the first half of plaintiff's complaint is readily discernible. In 2013, an immigration judge granted plaintiff, who is from Kenya, withholding of removal from the United States under INA section 241(b)(3). Since then, USCIS has issued plaintiff EADs as a non-citizen granted withholding of removal, pursuant to 8 C.F.R. §274a.12(a)(10). *See* #1-2 at ¶¶15, 20; *see also* #1-4 at 1-2 (order).

Plaintiff's EADs have been valid for one year. *See* #1-2 at ¶¶15, 20; *see also* #1-4 at 8, 10. He has "always" filed applications to renew his EADs "on time," at least three to five months before their expiration dates. (#1-2 at ¶17.) "[P]er USCIS policy,"[10] defendant is allotted three to four months to process such applications. *Id*.; *see also* #1-2 at ¶20. In the complaint, plaintiff alleges that the current processing time as set forth on USCIS' website was nine to fourteen months. (#1-2 at ¶17.) Plaintiff attached a print-out to the complaint from USCIS' website, dated October 12, 2021. (#1-4 at 16-17.) It shows that the current processing time for an "Application for Employment Authorization (I-765)" at the "National Benefits Center" was nine to ten months. *Id*. at 16.[11]

---

[10] Plaintiff does not specify what "policy."

[11] The print-out also explains, in part:

> This time range is how long it is taking USCIS to process your case from the date we received it. We generally process cases in the order we receive them, and we will update this page each month. The estimated time range displayed is based on data captured approximately two months prior to updating the page. Please note that times may change without prior notice.

(#1-4 at 16.)

In 2014, USCIS did not issue plaintiff's new EAD on time. As a result, plaintiff was laid off from his job at the Wisconsin Department of Transportation (DOT) for two months. (#1-2 at ¶¶19, 23.)[12]

In 2021, plaintiff filed an application to renew his EAD about six months in advance of the expiration date shown on its face, October 15, 2021. *See* #1-2 at ¶¶16, 20; #1-4 at 8; *see also* #1-4 at 5 (Form I-797C dated May 19, 2021). USCIS received the application on April 23, 2021 and sent plaintiff a Form I-797C on May 19. (#1-4 at 5.) The Form I-797C explained that the Notice of Action did not, by itself, grant any immigration status or benefit but did automatically extend the validity period of an EAD for up to 180 days from the expiration date shown on its face if specified conditions were met. *Id.*

Since 2013, plaintiff has used his EADs to apply for driver's licenses in Wisconsin and Minnesota. *See* #1-2 at ¶¶17, 20. According to plaintiff, an EAD is the only document that he can use when applying and to fulfill the REAL ID Act of 2005.[13] (#1-2 at ¶20.) The EAD includes his photo, date of birth, and country of origin. *See id.* at ¶17; *see also* #1-4 at 8, 10. The immigration

---

[12] Plaintiff attached a Form I-797C dated June 17, 2014, to his complaint, showing that his application to renew his EAD was received by USCIS on June 16. (#1-4 at 11.) Plaintiff also attached emails, apparently with colleagues at the Wisconsin DOT. *Id*. at 12-15. In one email, plaintiff explained that he applied to renew his EAD on June 16 because, in 2013, USCIS issued his EAD within 60 days. He was later informed that USCIS, by law, had up to 90 days to process applications and, in the future, he should apply to renew his EADs 90 days in advance. *Id*. at 12. In another email, he represented that USCIS issued his new EAD on September 29, 2014. In another, he received confirmation that his job would be reinstated on October 20. *Id*. at 14, 15.

[13] The REAL ID Act of 2005 provides that federal agencies may not accept, "for any official purpose," a driver's license or identification card issued by a state unless the state meets the requirements of the Act. Pub. L. No. 109-13, §202(a)(1), 119 Stat. 313 (49 U.S.C. § 30301 codified as note). An unexpired Form I-766 EAD may be presented by an applicant for a REAL ID Act-compliant license or identification card as proof of identity. 6 C.F.R. §37.11(c)(1)(v).

judge's order granting him withholding of removal does not include his photo. *See id.*; *see also* #1-4 at 1-2. Moreover, defendant has not "educated" the public that the order is proof of plaintiff's legal immigration status. (#1-2 at ¶17.) The Form I-797C does not include his photo and defendant has not educated the public that it is proof of plaintiff's legal immigration status. *See id*. at ¶¶25, 28-29; *see also* #1-4 at 5.

On August 16, 2021, the Minnesota Department of Public Safety Driver and Vehicle Services (DPS-DVS) sent plaintiff a letter explaining that the residency document he presented when he applied for his license was expiring and providing instructions for applying for a new license before October 16. (#1-4 at 3) (letter). On August 27, plaintiff went to DPS-DVS. (#1-2 at ¶26.) DPS-DVS made a copy of his Form I-797C but refused to extend his license by 180 days. *Id*. Plaintiff followed up with DPS-DVS via phone and email, providing education regarding his Form I-797C, "but [DPS-DVS] was not buying it. . . ." *Id*. Plaintiff spent over a month requesting that DPS-DVS explain in writing why his Form I-797C was insufficient. *Id*.; *see also* #1-4 at 4 (emails).

As of October 15, 2021, USCIS had not issued plaintiff's new EAD. (#1-2 at ¶20.) According to plaintiff, this is "late" and "beyond" the three-to-four months purportedly allotted. *Id*. As a result of the delay, plaintiff was unable to apply for a new license and no longer had an identification fulfilling the REAL ID Act. *Id.* Plaintiff alleges that it is "vital" that defendant issue his new EADs "on time," before the expiration of his old EADs. Delays can disturb his "normal operation" and "life" in the United States, resulting in "actual and substantial prejudice." (#1-2 at ¶¶17-18); *see id*. at ¶¶34-35.

  2. <u>Legal claims</u>.

   a. <u>Requests for official action</u>.

Although the first half of his complaint is confusing, the court discerns that plaintiff requests orders compelling defendant to do four things: (1) issue plaintiff an EAD immediately, *see* #1-2 ¶¶12, 30, 35; (2) issue plaintiff future EADs on time, *see id.* ¶¶12, 27, 30, 68, 69;[14] (3) issue plaintiff EADs that remain valid longer or indefinitely, *see id.* ¶¶27, 30; and (4) issue plaintiff a form of identification other than an EAD with his photo as proof of his legal immigration status and to fulfill the REAL ID Act, *see id.* ¶¶12, 26, 30, 33, 68, 69. Defendant, quite reasonably, interprets these as requests under the MVA for mandamus relief. (#37 at 6-14.) In his Response and Opposition, plaintiff argues that he is entitled to mandamus relief, but also characterizes his claims as arising under the APA. *See* #38 at ¶¶12-19; *see also* #39 at 5.

b. Alleged constitutional violations.

Plaintiff invokes three constitutional provisions in the first half of his complaint: (1) the Equal Protection Clause; (2) the Due Process Clause; and (3) the Eighth Amendment. *See, e.g.*, #1-2 at ¶¶18, 20, 21, 24, 34, 35. He seeks injunctive and declaratory relief. *See, e.g.*, #1-2 at 1-52 (header); #1-2 at ¶12. In his Response, he denies seeking damages. (#38 at ¶21.)

Plaintiff's equal protection theory is that, as a non-citizen granted withholding of removal, he is treated differently than non-citizens who do not have to apply to renew EADs annually, which USCIS may deny or delay. He is also treated differently than visitors to, or other non-citizens living in, the United States who are provided documents, like visas or green cards, that have longer validity periods and include their photos. Plaintiff's EADs include his photo. However, when his EAD expires and USCIS delays in issuing a new one, plaintiff does not have adequate, alternative identification. *See* #1-2 at ¶¶16-18, 20, 27, 34.

---

[14] Defendant reads plaintiff's complaint to include a request for issuance of EADs annually. (#37 at 7-10.) The court agrees with plaintiff, *see* #39 at 5-14, that he means to request issuance of future EADs on time.

Plaintiff's due process theory sounds in the void-for-vagueness doctrine. He appears to allege that because USCIS can delay EADs or deny them outright without providing alternative identification, the immigration laws are "standard-less" and encourage "arbitrary" and "discriminatory" enforcement. *See* #1-2 at ¶¶18, 24, 32. Plaintiff may also be alleging that any delays in issuing his EADs, plus the failure to provide alternative identification, violate his procedural due process rights. *See id*. at ¶¶21, 25, 34.

Finally, plaintiff alleges that any delays in issuing his EADs are "de facto sanctions" and "abuse[s] of discretion" implicating his Eighth Amendment rights. (#1-2 at ¶18.)

C. <u>Plaintiff's Requests for Official Action Should Be Dismissed</u>.

1. <u>First and second</u>.

Article III limits a federal court's jurisdiction to "Cases" and "Controversies." U.S. Const. art. III § 2. The mootness doctrine enforces the requirement that an actual controversy exist at all stages of the case, not merely when the complaint is filed. *Am. Civ. Liberties Union of Mass. v. U.S. Conf. of Catholic Bishops*, 705 F.3d 44, 52 (1st Cir. 2013) ("*ACLUM*") (citation omitted); *see Bos. Bit Labs, Inc. v. Baker*, 11 F.4th 3, 8 (1st Cir. 2021). The "heavy" burden of proving mootness rests on the party invoking the doctrine – here, defendant. *Bos. Bit Labs*, 11 F.4th at 8 (citation omitted); *see also West Virginia v. Environ. Protection Agency*, --- U.S. ---, 142 S.Ct. 2587, 2607 (2022). A claim becomes moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. *Harris v. Univ. of Mass. Lowell*, 43 F.4th 187, 191 (1st Cir. 2022) (citations omitted); *see Bos. Bit Labs*, 11 F.4th at 8. A party lacks a legally cognizable interest in the outcome when the court cannot provide any relief that will redress the alleged harm. *Harris*, 43 F.4th at 191 (citations omitted).

In the absence of a claim for damages, a claim for injunctive relief becomes moot if, as a result of an intervening event, there is no "ongoing conduct to enjoin." *Harris*, 43 F.4th at 192-193 (quoting *Bos. Bit Labs*, 11 F.4th at 9). Similarly, in the absence of a claim for damages, a claim for declaratory relief becomes moot if, as a result of an intervening event, there is no "substantial controversy" of "sufficient immediacy and reality. . . ." *Harris*, 43 F.4th at 193 (punctuation and emphasis omitted) (quoting *ACLUM*, 705 F.3d at 53-54). For equitable relief, the fact that a plaintiff suffered harm in the past does not mean that an actual controversy remains. *See Steir v. Girl Scouts of the USA*, 383 F.3d 7, 16 (1st Cir. 2004); *accord Gray v. Cummings*, 917 F.3d 1, 19 (1st Cir. 2019) (to have standing to pursue injunctive relief, plaintiff must "'establish a real and immediate threat' resulting in 'a sufficient likelihood that [he] will be wronged in a similar way'") (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)); *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 98 (2013) ("But we have never held that a plaintiff has standing to pursue declaratory relief merely on the basis of being 'once bitten.' Quite the opposite") (citing *Lyons*, 461 U.S. at 109); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (". . . the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment") (citation and punctuation omitted).

Defendant argues, *see* #37 at 4-5, and plaintiff concedes, *see* #39 at 2, that his first request – issue him an EAD immediately – is moot. On December 9, 2021, USCIS issued plaintiff's new EAD, good through December 8, 2022. *See* #37-1. The court recommends dismissal of this request under Fed. R. Civ. P. 12(b)(1).

The court also recommends dismissal of plaintiff's second request – issue him future EADs on time – under Rule 12(b)(1). This request is no longer live. Whether raised under the MVA,

APA, or both, courts routinely declare comparable delay-based claims moot after USCIS processes the once-pending applications.[15]

Plaintiff does not avoid mootness by alleging that he has "already suffered harm." (#39 at 2); see also #38 at ¶4. He is not seeking damages; he is seeking injunctive and declaratory relief. There is no ongoing delay to enjoin. See Harris, 43 F.4th at 192. Likewise, there is no substantial controversy of sufficient immediacy and reality. See id.; accord Steir, 383 F.3d at 16 ("To be entitled to a forward-looking remedy, a plaintiff must satisfy the basic requisites of equitable relief – the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law. . .") (citation and punctuation omitted).

The fact that plaintiff will file applications to renew his EADs in the future does not help him here. USCIS's processing of plaintiff's future applications "could be" delayed,[16] but that is

---

[15] See, e.g., Kang, 2022 WL 4446385, at *1, 3 (LPR applicants' delay-based APA claims moot after USCIS processed once-pending EAD applications; "Because defendants have adjudicated the application of each named plaintiff, an order declaring that defendants have violated the APA and that '[d]efendants have unreasonably delayed or unlawfully withheld the adjudication' of the applications and compelling '[d]efendants to immediately adjudicate '[p]laintiffs' [employment authorization] applications without further delay' and to 'return to and maintain 90-day processing' – plaintiffs' requested relief – would have no effect on plaintiffs") (citation to record omitted); Tony N. v. U.S. Citizenship and Immigration Srvcs., #21-cv-08742-MMC, 2022 WL 612666, at *1 (N.D. Cal. Mar. 2, 2022) (asylum applicants' delay-based APA and mandamus claims moot after USCIS processed once-pending EAD applications); Manvi v. United States Citizenship and Immigration Srvc., #21-cv-00542-JSC, 2021 WL 2554094, at *1 (N.D. Cal. June 22, 2021) ("The unreasonable delay claims brought by the seven Plaintiffs whose work reauthorizations have been adjudicated are moot with regard to any relief that could be granted") (emphasis in original); see also, e.g., Yacoub v. Blinken, #21-cv-983 (TSC), 2022 WL 4598681, *4 (D. D.C. Sept. 30, 2022) (delay-based APA claim moot; "Defendants are no longer 'delaying' adjudication of those eleven Plaintiffs' [K-1] visa applications, such that there is no longer a 'live' dispute"); Almakalani v. McAleenan, 527 F. Supp. 3d 205, 222-223, 225-226 (E.D. N.Y. 2021) (delay-based APA and mandamus claims moot after USCIS processed once-pending Form I-130 petitions).

[16] Recent updates to USCIS guidance and regulations reduce the likelihood. Plaintiff's next EADs may be valid for two years. See USCIS, "USCIS Updates Guidelines on Maximum Validity Periods for New Employment Authorization Documents for Certain Applicants," https://www.uscis.gov/newsroom/alerts/uscis-updates-guidelines-on-maximum-validity-periods-

not enough. *See Steir*, 383 F.3d at 16; *accord Harris*, 43 F.4th at 195 (". . . avoiding mootness, like establishing standing, requires an 'actual or imminent' and 'concrete and particularized,' redressable injury. . . .Just as standing cannot rest on a 'conjectural' or 'hypothetical' harm, . . . avoiding mootness cannot rest on 'speculation' about some future potential event. . .") (citations omitted).[17]

    2. <u>Third</u>.

Mandamus is "extraordinary" relief "reserved for special situations." *In re City of Fall River, Mass.*, 470 F.3d 30, 32 (1st Cir. 2006); *see Cervoni v. Sec'y of Health, Ed. and Welfare*, 581 F.2d 1010, 1019 (1st Cir. 1978) ("The mandamus remedy is available only under exceptional circumstances of clear illegality"); *see also Gonzalez v. U.S. Citizenship and Immigration Srvcs.*, #21-cv-10286-FDS, 2022 WL 658658, at *4 (D. Mass. Mar. 4, 2022). Plaintiff must establish that he has (1) a "clear" right to relief; (2) no other adequate remedy; and that (3) there is "a clearly defined and peremptory duty" on defendant's part to do the action sought. *Diaz*, 268 F. Supp. 3d at 274 (quoting *Arruda & Beaudoin, LLP v. Astrue*, #11-cv-10254-GAO, 2013 WL 1309249, at *18 (D. Mass. Mar. 27, 2013) (quoting *Georges v. Quinn*, 853 F.2d 994, 995 (1st Cir. 1988)).

---

for-new-employment-authorization-documents-for (last visited Nov. 2, 2022). And he may be entitled to automatic 540-day extensions. *See* 8 C.F.R. §274a.13(d)(5).

[17] There are exceptions to the mootness doctrine, such as the "capable of repetition, yet evading review" exception and "voluntary cessation." *See Harris*, 43 F.4th at 194-195 (former requires plaintiff to show that challenged behavior was too short in duration to be litigated fully and "reasonable expectation" that he will be subject to challenged behavior again) (citations and punctuation omitted); *Bos. Bit Labs*, 11 F.4th at 9-12 (discussing latter, an evidentiary presumption meant to prevent "scheming" defendant from "immuniz[ing] itself from suit indefinitely. . .;" presumption does not apply if change in behavior is unrelated to litigation) (citations and punctuation omitted). Plaintiff has not shown a reasonable expectation that he will be subject to delay again, and the court declines to recommend application of the former. Nor does the latter "neatly apply here," *see Kang*, 2022 WL 4446385, at *5, where USCIS apparently processed plaintiff's application and issued his new EAD in the ordinary course. *See id.*

USCIS expressly has discretion to set validity periods, *see* 8 C.F.R. §274a.12(a), and plaintiff has not established that defendant has a clear, nondiscretionary duty to issue him EADs that have longer or indefinite validity periods. This third request fails.

### 3. Fourth.

Plaintiff has an EAD now. His EAD includes his photo, date of birth, and country of origin. *See* #1-2 at ¶¶17, 20; *see also* #13-1 at 1. He can use his EAD to apply for a new, REAL ID Act-compliant license. *See* #1-2 at ¶20; *see also* 6 C.F.R. §37.11(c)(1)(v).[18] Plaintiff's fourth request – issue him alternative identification – is moot. The court recommends dismissal of his third and fourth requests. He has not made anywhere near the showing required for extraordinary mandamus relief.[19]

### D. Plaintiff's Constitutional Claims Should Be Dismissed.

### 1. Equal Protection.

The Due Process Clause of the Fifth Amendment contains an equal protection guarantee that, unquestionably, applies to non-citizens in the United States. *See Kandamar v. Gonzalez*, 464 F.3d 65, 72 (1st Cir. 2006); *Campos v. I.N.S.*, 961 F.2d 309, 316 (1st Cir. 1992); *see Louhghalam v. Trump*, 230 F. Supp. 3d 26, 33 (D. Mass. 2017). Yet "[n]owhere is the scope of judicial inquiry more limited" than in the area of federal immigration legislation and regulation. *Kandamar*, 464 F.3d at 72 (quoting *Adams v. Baker*, 909 F.2d 643, 647 (1st Cir. 1990)); *see Trump v. Hawaii*, ---

---

[18] In fact, plaintiff did, and he has a REAL ID Act-compliant license now, good through December 8, 2022. *See* #39 at 3; *see also* #39-1 at 2 (new license).

[19] A claim that agency action has been "unlawfully withheld," *see* 5 U.S.C. § 706(1), is viable only if the agency has failed to take a "*discrete*" action that "it is *required to take*." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original); *see Am. Waterways Operators*, 2020 WL 360493, at *6, 8. Construing plaintiff's third and fourth requests as APA, rather than mandamus, claims does not alter the court's recommendation.

U.S. ---, 138 S.Ct. 2392, 2418 (2018) (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)); *see also Mathews v. Diaz*, 426 U.S. 67, 77-83 (1976). Federal legislation and regulations that treat non-citizens in the United States disparately, whether compared to citizens or other non-citizens, are subject only to "rational basis" judicial inquiry. *Bruns v. Mayhew*, 750 F.3d 61, 66 (1st Cir. 2014); *see Louhghalam*, 230 F. Supp. 3d at 33.

On rational basis review, the court does not assess "the wisdom, fairness, or logic" of federal legislative or regulatory classifications based on non-citizen status. *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993) (citation and punctuation omitted); *see Fiallo*, 430 U.S. at 799; *see also Louhghalam*, 230 F. Supp. 3d at 34. There must be "a rational relationship between the disparity in treatment and some legitimate governmental purpose." *Heller*, 509 U.S. at 320. But the court will uphold federal legislative or regulatory classifications based on non-citizen status "if there is any reasonably conceivable state of facts that could provide a rational basis. . . ." *Id.* (citation and punctuation omitted); *see Louhghalam*, 239 F. Supp. 3d at 34.

Plaintiff has failed to state a plausible equal protection claim. The court therefore recommends dismissal under Fed. R. Civ. P. 12(b)(6).[20] First, there is a rational basis for issuing a non-citizen who is visiting the United States an identification that includes his photo and sets forth, for instance, the purpose and duration of his stay.[21]

---

[20] Rational basis review is routinely conducted at the motion to dismiss stage. *See, e.g.*, *Mazzarino v. Mass. State Lottery Comm'n*, --- F.Supp.3d ---, #21-cv-11516-MPK, 2022 WL 2713733, at *5-6 (D. Mass. July 13, 2022); *Collins v. Bos. Pub. Health Comm'n*, #21-cv-10940-FDS, 2022 WL 425569, at *5 (D. Mass. Feb. 11, 2022); *Brown*, 451 F. Supp. 2d at 281-282; *see also*, *e.g.*, *Mulero-Carrillo v. Román-Hernández*, 790 F.3d 99, 106-108 (1st Cir. 2015).

[21] Non-citizens granted withholding of removal are not eligible for travel documents that would allow them to re-enter the country in the event they left. *See Garcia*, 856 F.3d at 32 (citing 8 C.F.R. §§223.1, 223.2); *see also id.* at 47 & n. 18 (Stahl, J., dissenting). Unlike a visitor then, a non-citizen granted withholding of removal would presumably not be in a position of having authorities, upon re-entry to the country, verify his identity or the purpose and duration of his stay.

There is also a rational basis for issuing employment authorization evidence to LPRs and asylees that does not need to be renewed as often as the EADs issued to non-citizens granted withholding of removal. A non-citizen granted withholding of removal is only protected from removal to the country in which his life or freedom would be threatened; he may be removed to another. Authorities may rationally require more frequent contact with non-citizens who face such jeopardy and less frequent contact with non-citizens, like LPRs and asylees, who do not. Further, authorities may rationally require more frequent contact with non-citizens, like those granted withholding of removal, who are not eligible for adjustment to LPR status compared to non-citizens, like asylees, who are eligible.

   2. Due Process.

   Plaintiff's void-for-vagueness allegations, *see* #1-2 at ¶¶18, 24, 29, 32, are conclusory, and the court recommends dismissal under Rule 12(b)(6). Even if his allegations were not conclusory, plaintiff's theory is misguided. An enactment is unconstitutionally vague "if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972). Given its underlying purposes, *see id.*, courts have repeatedly declined to apply the void-for-vagueness doctrine to enactments governing the provision of public benefits or assistance, as opposed to enactments prohibiting conduct or implicating the First Amendment.[22] Neither the withholding of

---

[22] *See*, *e.g.*, *Lamoureux v. Comm'r of Soc. Sec. Admin.*, #20-1677, 2021 WL 5860738, at *3 (3d Cir. Dec. 10, 2021) (unpublished) (declining to consider void-for-vagueness challenge to statute and regulation defining disability for purpose of entitlement to Social Security benefits; doctrine has "no application" to "public-assistance provisions") (citations omitted); *Shepherd v. Comm'r of Soc. Sec.*, #2:20-cv-6576, 2021 WL 5451007, at *10 (S.D. Ohio Nov. 22, 2021) (similar); *see also*, *e.g.*, *Nyeholt v. Sec'y of Vet. Affs.*, 298 F.3d 1350, 1356-1357 (Fed. Cir. 2002) (rejecting void-for-vagueness challenge to department schedule for rating disabilities; schedule "merely serves as a guide that medical examiners. . .use in determining whether and to what degree a veteran is disabled for purposes of awarding benefits. . . .[S]tandards of proof that must be satisfied in order to obtain government benefits are not analogous to standards that inform the public what one can and cannot do without incurring civil and/or criminal penalties, and the policies underlying the void-for-vagueness doctrine. . .are simply not implicated by statutes and regulations containing the

removal provisions targeted by plaintiff nor the EAD regulations implicate the First Amendment. They are also not enactments prohibiting conduct.

For the same reasons that the court recommends that his first, second, and fourth requests for official action be dismissed as moot, the court recommends that plaintiff's procedural due process allegations be dismissed as moot. They appear to be premised on USCIS's delay in issuing his new EAD and failure to provide alternative identification. Plaintiff has his EAD now and the court declines to recommend application of the capable of repetition, yet evading review exception or the voluntary cessation presumption.[23]

### 3. Eighth Amendment.

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "Taken together, these Clauses place parallel limitations on the power of those entrusted with the criminal-law function of government." *Timbs v. Indiana*, --- U.S. ---, 139 S.Ct. 682, 687, 690 (2019) (citations and punctuation omitted); *see Hinds v. Lynch*, 790 F.3d 259, 263-268 (1st Cir. 2015).

---

former category of standards") (citing *Grayned*, 408 U.S. at 108-109); *Woodruff v. U.S. Dept. of Labor, Office of Workers Compensation Program*, 954 F.2d 634, 642 (11th Cir. 1992) (void-for-vagueness challenge to section of manual that set forth rule for department to apply in making workers' compensation benefits determination "wholly without merit"); *cf. Linares Huarcaya v. Mukasey*, 550 F.3d 224, 230-231 (2d Cir. 2008) (per curiam) (plaintiff's "ability to maintain a void-for-vagueness challenge to a civil regulation that provides immigration benefits is not clear").

[23] This mootness finding deprives the court of subject matter jurisdiction. Because plaintiff seems to be claiming that the Due Process Clause imposes clear, nondiscretionary duties, *see* #39 at 15, however, the court notes that procedural due process claims are rejected in cases involving delays in immigration processing of many years. *See generally L.M. v. Johnson*, 150 F. Supp. 3d 202, 216-217 (E.D. N.Y. 2015) (". . . courts that have considered delays in the immigration context that far surpass the two-year delays alleged by Plaintiffs have rejected due process claims") (citing, *inter alia*, *Mudric v. Attorney Gen*., 469 F.3d 94, 99 (3d Cir. 2006) (four-year delay; ". . .the various discretionary privileges and benefits conferred on aliens by our federal immigration laws do not vest in aliens a constitutional right to have their immigration matters adjudicated in the most expeditious manner possible"); *Vang v. Gonzales*, 237 Fed. Appx. 24, 31 (6th Cir. 2007) (unpublished) (fourteen-year delay)).

In the same paragraph of his complaint in which he alleges that that delays in issuing new EADs implicate the Eighth Amendment, plaintiff describes the "dire" "punishments" that result: he "can't drive, can't eat, can't get on a plane or [enter a] federal building. . . ." (#1-2 at ¶18). His reference to "dire" "punishments" may be a reference to the protection against "cruel and unusual" ones, but he does not explain, in any of his voluminous pleadings, how that Clause applies. Because plaintiff's Eighth Amendment allegations are conclusory, they should be dismissed under Rule 12(b)(6). *Cf., e.g.*, *Falk*, 2022 WL 1224936, at \*3 ("While it is incumbent on this Court to infer an appropriate cause of action on behalf of a pro se plaintiff where one can be perceived. . ., it is unavailing for such a plaintiff to invoke a federal regulation generally and leave the details for the Court to infer") (citation omitted).

## IV. <u>Conclusion</u>.

For the reasons set forth above, the court recommends that defendant's Partial Motion to Dismiss (#36) be allowed.

## V. <u>Review by District Judge</u>.

The parties are advised that any party who objects to this recommendation must file a specific written objection with the Clerk of this Court within fourteen days of service of the Report and Recommendation. The written objection must specifically identify the portion of the Report and Recommendation to which objection is made and the basis for such objection. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *U.S. v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983);

*U.S. v. Vega*, 678 F.2d 376, 378–79 (1st Cir. 1982); *Park Manor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).


November 9, 2022

/s/ M. Page Kelley
M. Page Kelley
Chief United States Magistrate Judge